HOWES, by Guardian *ad litem*, and another, Respondents, v. HANSEN, by Guardian *ad litem*, and others, Defendants: DEERE & COMPANY, Appellant. [Case No. 201.]

HOWES, by Guardian *ad litem*, and another, Plaintiffs, v. HANSEN, by Guardian *ad litem*, and another, Defendants: SCHATZMAN and others, Defendants and Third-Party Plaintiffs and Appellants: HANSEN and another, Third-Party Defendants and Respondents. [Case No. 202.]

*Nos. 201, 202. Argued October 2, 1972.—Decided November 9, 1972.*
(Also reported in 201 N. W. 2d 825.)

248

For the appellant in Case No. 201 there was a brief by *Michael, Best & Friedrich,* attorneys, and *Kenneth K. Luce* and *Thomas E. Obenberger* of counsel, all of Milwaukee, and oral argument by *Mr. Obenberger.*

For the appellants in Case No. 202 there was a brief by *Godfrey, Neshek & Worth* of Elkhorn, and oral argument by *Harry F. Worth, Jr.*

For the respondents in Cases No. 201 and 202 there were briefs by *Braden & English* of Lake Geneva, and oral argument by *James L. English.*

WILKIE, J. The first important controversy involved on this appeal concerns Case No. 201, and raises two issues:

1. Did the trial court err in overruling a demurrer to the amended complaint because that complaint did not state sufficient facts to constitute a cause of action against Deere & Company in strict liability in tort?

2. Should an action based on strict liability be extended to injured bystanders?

In *Dippel v. Sciano,*[1] this court adopted the concept of strict liability in tort propounded in the Restatement:[2]

" 'Sec. 402A. **Special Liability of Seller of Product for Physical Harm to User or Consumer**

" '(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

" '(a) the seller is engaged in the business of selling such a product, and

" '(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

" '(2) The rule stated in subsection (1) applies although

" '(a) the seller has exercised all possible care in the preparation and sale of his product, and

" '(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.' "

---

[1] (1967), 37 Wis. 2d 443, 459, 155 N. W. 2d 55.

[2] Restatement, 2 *Torts* 2d, pp. 347, 348, sec. 402A..

Strict liability is not absolute liability. Rather, it does aid the plaintiff by relieving him of proving specific acts of negligence and protecting him from the defenses of notice of breach, disclaimer and privity of contract. The plaintiff, according to *Dippel,* must yet prove:

". . . (1) that the product was in defective condition when it left the possession or control of the seller, (2) that it was unreasonably dangerous to the *user or consumer,* (3) that the defect was a cause (a substantial factor) of the plaintiff's injuries or damages, (4) that the seller engaged in the business of selling such product or, put negatively, that this is not an isolated or infrequent transaction not related to the principal business of the seller, and (5) that the product was one which the seller expected to and did reach the *user* or *consumer* without substantial change in the condition it was when he sold it." (Emphasis supplied.) [3]

The concept of strict liability, as spelled out in the Restatement 402A and as adopted by this court in *Dippel,* was explained by Mr. Justice HALLOWS, now chief justice, in his concurring opinion:

"What we mean is that a seller who meets the conditions of sec. 402A, Restatement, 2 Torts 2d in Wisconsin is guilty of negligence as a matter of law and such negligence is subject to the ordinary rules of causation and the defense applicable to negligence." [4]

The question before this court on this appeal is whether the plaintiffs-respondents stated a valid cause of action in their amended complaint, which states:

"(10) That, upon information and belief, the defendant Fred Schatzman, who is the son of the defendant Naomi Schatzman, on June 30th, 1970, was the owner of a riding mower, Model 110 Tractor, Serial No. 067915M, manufactured and designed by the defendant John Deere . . . .

---

[3] *Supra,* footnote 1, at page 460.
[4] *Id.* at page 464.

"(11) That, upon information and belief, on the 30th day of June, 1970, the defendant Fred Schatzman arranged for the defendant Mark Hansen, to cut his lawn and the lawn of the defendant Naomi Schatzman and provided the John Deere riding mower for such purpose; that while the defendant Mark Hansen was mowing the lawn of the defendant Naomi Schatzman, the blades of the mower struck the right foot of the plaintiff Richard Howes II."

The answer is "No." Nowhere in the amended complaint is it contended that plaintiff Richard Howes II was either a "user" or "consumer" within the doctrine of strict tort liability adopted in *Dippel*. The plaintiff-injured was a *bystander* who was injured when his foot came in contact with the power mower. Thus, on the facts as presented in both the complaint and amended complaint plaintiff does not state a cause of action sounding in strict tort liability as enunciated in this jurisdiction.

However, the second issue raised here on the appeal in Case No. 201 is whether the cause of action recognized in *Dippel* should be extended to cover this bystander.

The same reasons that prompted us in *Dippel* to adopt the concept of strict liability to users or consumers cause us now to extend that concept to bystanders.

True, the Restatement itself took no position one way or the other on this extension. It stated at Comment *o* as follows:

"*o. Injuries to non-users and non-consumers.* Thus far the courts, in applying the rule stated in this section, have not gone beyond allowing recovery to users and consumers, as those terms are defined in Comment *l.* Casual bystanders, and others who may come in contact with the product, as in the case of employees of the retailer, or a passer-by injured by an exploding bottle, or a pedestrian hit by an automobile, have been denied recovery. There may be no essential reason why such plaintiffs should not be brought within the scope of the protection afforded, other than that they do not have the same reasons for expecting such protection as the consumer who buys

a marketed product; but the social pressure which has been largely responsible for the development of the rule stated has been a consumers' pressure, and there is not the same demand for the protection of casual strangers. The Institute expresses neither approval nor disapproval of expansion of the rule to permit recovery by such persons." [5]

There is no essential difference between the injured user or consumer and the injured bystander. In *Dippel* we stated those reasons, which the trial court cited here as reasons for extending the concept as follows:

"1. '. . . we must be concerned about the just claims of the injured . . .' [*Dippel*] Page 450.

"2. '. . . the seller is in the paramount position to distribute the costs of the risks created by the defective product he is selling.' Page 450.

"3. 'He may pass the cost on to the consumer via increased prices.' Page 450.

"4. 'He may protect himself either by purchasing insurance or by a form of self-insurance.' Page 450.

"5. '. . . the manufacturer has the greatest ability to control the risk created by his product since he may initiate or adopt inspection and quality control measures thereby preventing defective products . . . .' Page 451."

As was stated by then Justice TRAYNOR in *Greenman v. Yuba Power Products, Inc.,*[6] the leading case making no distinction in extending strict liability protection between users, consumers and bystanders:

". . . A manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a *human being.*" (Emphasis supplied.) [7]

Appellant makes several arguments against the extension of the concept of strict liability for the protection of bystanders:

---

[5] Restatement, 2 *Torts* 2d, pp. 356, 357, sec. 402A, Comment *o.*

[6] (1963), 59 Cal. 2d 57, 377 Pac. 2d 897.

[7] *Id.* at page 62. (The plaintiff was, however, a product user.)

1. It is contended that the concept of cost spreading or distribution [8] does not apply to bystanders since they are not in the distributive chain. Although a bystander ordinarily is not in this direct distributive chain of a particular product purchased from a particular manufacturer or seller, at least one author has suggested bystanders are usually indirectly in such distributive chain.[9] Moreover, the underlying theory of compensation based on strict liability is one of tort and the cost distribution concept runs counter to basic tort theory by urging that the injured party should share in paying the recovery he seeks for the injury done by the seller.

2. Appellant contends that a bystander has no right to complain because he is not the person the manufacturer or seller has attempted to reach with implied representations of quality and safety. On this point Harper and James were prompted to say:

". . . Apparently recovery has not yet been allowed to such a complete outsider on a warranty theory. But why not? Such injury is often a perfectly foreseeable risk of the maker's enterprise, and the considerations for imposing such risks on the maker without regard to his fault do not stop with those who undertake to use the chattel. Such a restriction is only the distorted shadow of a vanishing privity which is itself a reflection of the habit of viewing the problem as a commercial one between traders, rather than as part of the accident problem." [10]

In Wisconsin this argument was dealt with in the adoption of strict tort liability. *Dippel* made it clear that the abrogation of the privity requirement was not strictly

[8] *See Escola v. Coca Cola Bottling Co.* (1944), 24 Cal. 2d 453, 462, 150 Pac. 2d 436 (concurring opinion).

[9] Note, *Strict Products Liability to the Bystander: A Study in Common Law Determinism*, 38 U. Chi. L. Rev. (1971), 625, 638, 639.

[10] 2 Harper and James, *The Law of Torts* (1956), p. 1572, sec. 28.16, note 6.

and exclusively a matter of sales and contract law. Rather,

". . . When the manufacturer or the seller offers a product for sale which he expects to be used by the consuming public within its intended use and such product is defective and injures the consumer, his liability in tort can be based upon a breach of duty quite apart from contract obligations." [11]

As the concept of warranties and representations is essentially contractual in nature they are considerations foreign to strict liability in tort. Indeed, the very allowance in the Restatement is to "users" and "consumers." [12] Since users are not necessarily consumers to whom promises of safety and reliability have been made, appellant's argument that bystanders have no right to rely is equally invalid. [13]

3. Appellant opposes extending strict liability in tort to bystanders because such extension would expose sellers to liability "to completely unlimited and unforeseeable classes of nonusers and bystanders."

Essentially the same argument was used a century ago in *Winterbottom v. Wright,* wherein privity was initially extended to negligence actions:

". . . if the plaintiff can sue, every passenger, or even any person passing along the road, who was injured by the upsetting of the coach, might bring a similar action." [14]

This fear of appellant is simply untrue. To extend strict tort liability to bystanders would not create an

[11] *Dippel v. Sciano, supra,* footnote 1, at page 458.

[12] Restatement, 2 *Torts* 2d, p. 354, sec. 402A, Comment *l.*

[13] *See also:* Noel, *Products Liability: Bystanders, Contributory Fault and Unusual Uses* (1970), 50 F. R. D. 321, 325, 326.

[14] (1842 Ex. 8), 10 M. & W. 109, 114, 152 Eng. Rep. (Full Reprint) 402, 405.

infinite class of persons to whom liability for an ill-constructed product is owed. This is especially true in Wisconsin where it has been noted that the adoption of the Restatement dispenses with the requirement that the plaintiff prove specific acts of negligence. Dispensed with also are several defenses peculiar to contract and sales law. The injured plaintiff must yet prove a defective condition existed when the product left the manufacturer; it was unreasonably dangerous; causation between the defect and plaintiff's injuries; it was sellers usual business; and the product was received by the plaintiff without substantial change in condition.[15] Further, the defense of contributory negligence is available to the defendant.

Appellant attempts to distinguish those cases from non-Wisconsin jurisdictions which have adopted the extension of strict liability to bystanders on the basis that they uniformly rely on the doctrine of foreseeability. Wisconsin, it is asserted, does not entertain foreseeability as an element of tort jurisprudence. Therefore, those cases are of little persuasiveness in this jurisdiction. A reading of these cases indicates, however, that the use of "foreseeability" in these cases is not a technical usage of the term. Rather, a general discussion of a manufacturer's duty is present. An example is *Elmore v. American Motors Corp.*[16] wherein it is clear that the California Supreme Court is not using the term "foreseeability" in the traditional legal sense:

"If anything, bystanders should be entitled to greater protection than the consumer or user where injury to bystanders from the defect is reasonably foreseeable."

To like effect is *Sills v. Massey-Ferguson, Inc.*[17] These courts say it is reasonable for a manufacturer to

---

[15] *Dippel v. Sciano, supra,* footnote 1, at page 460.
[16] (1969), 70 Cal. 2d 578, 586, 451 Pac. 2d 84.
[17] (D. C. Ind. 1969), 296 Fed. Supp. 776.

expect a nonuser or nonconsumer to be injured when the product explodes. Zones of danger and the like are not discussed.

*Dippel* makes it absolutely clear that the doctrine of foreseeability, although a recognized doctrine where ordinary negligence in tort is involved, has no part in the concept of strict liability in tort. In *Dippel* we stated:

". . . The liability imposed is not grounded upon a failure to exercise ordinary care with its necessary element of foreseeability; it is much more akin to negligence per se.

"Negligence per se was defined in *Osborne v. Montgomery* (1931), 203 Wis. 223, 240, 234 N. W. 372, as follows:

" 'We come now to a consideration of that class of cases where foreseeability is not an element of negligence,—a more accurate statement would be to that class of cases where the defendant is foreclosed or concluded upon the question of foreseeability. In all those cases where it is said that, the performance of the wrongful act being admitted, the defendant is guilty of negligence as a matter of law or that the act is negligent per se, the case is one which admits of no question as to reasonable anticipation or foreseeability. These cases are those in the main where the act amounts to a violation of a standard of care fixed by statute (ordinance) or previous decision. The employment of a minor child in violation of the statute is an instance of the first kind, and the failure to stop, look, and listen is the most common illustration of the second type. It is apparent that there must always be a causal relation between the act complained of and the injury sustained; otherwise liability does not follow.' " [18]

The doctrine of foreseeability has no application to the extension of the strict liability concept of *Dippel* for the protection of bystanders, such as the minor plaintiff here.

---

[18] *Dippel v. Sciano, supra,* footnote 1, at page 461.

To date there have been roughly 10 jurisdictions which have adopted the extension of strict tort liability to bystanders who are innocently injured.[19] The prevailing reason for the extension has been the feeling that there is no essential difference between the injured user or consumer and the injured bystander. The reasons for the initial adoption of strict liability are uniformly felt to apply equally to the bystander. Some have gone much further by suggesting that because of his inability to "kick the tires" the bystander is in need of more protection than the user or consumer.[20]

Thus we conclude that the trial court did not err in overruling the appellant's demurrer on the grounds that the concept of strict liability applied for the protection of the bystander here. In extending this potential liability, we are further implementing the policy that a manufacturer should be strictly liable in tort when he places a defective article on the market "that causes injury to a human being."[21]

The second controversy raised on this appeal concerns Case No. 202, and the single issue raised on this appeal is whether the trial court erred in sustaining a demurrer

[19] *Piercefield v. Remington Arms Co.* (1965), 375 Mich. 85, 133 N. W. 2d 129; *Mitchell v. Miller* (1965), 26 Conn. Supp. 142, 214 Atl. 2d 694; *Sills v. Massey-Ferguson, Inc., supra,* footnote 17; *Darryl v. Ford Motor Co.* (Tex. 1969), 440 S. W. 2d 630; *Elmore v. American Motors Corp., supra,* footnote 16; *Klimas v. International Telephone & Telegraph Corp.* (D. C. R. I. 1969), 297 Fed. Supp. 937 (although plaintiff was a user the court expressly stated that its rule eliminated the user-consumer limitation); *Caruth v. Mariani* (1970), 11 Ariz. App. 188, 463 Pac. 2d 83 (this was a rehearing of (1969), 10 Ariz. App. 277, 458 Pac. 2d 371); *White v. Jeffrey Galion, Inc.* (D. C. Ill. 1971), 326 Fed. Supp. 751; *Wasik v. Borg* (2d Cir. 1970), 423 Fed. 2d 44; *Lamendola v. Mizell* (1971), 115 N. J. Super 514, 280 Atl. 2d 241.

[20] *See, e.g., Caruth v. Mariani, supra,* footnote 19; *Elmore v. American Motors Corp., supra,* footnote 16.

[21] *Greenman v. Yuba Power Products, Inc., supra,* footnote 6, at page 62.

of the third-party complaint against plaintiff's mother on the basis of the mother's parental immunity.

In their third-party complaint against the child's mother the defendants Fred Schatzman, Naomi Schatzman, and United States Fire Insurance Company (insurer of Fred Schatzman), allege that Betty Howes:

"a. Failed to supervise and control the movements and actions of her son, Richard Howes II, when she knew or should have known, that the defendant, Mark Hansen was mowing the lawn at her residence with a Deere & Company riding mower without supervision.

"b. Instructed her son, Richard Howes II, to leave her presence in the house and go outside to pick up certain items on the lawn, knowing that the mowing operation, as aforementioned, was in progress."

The facts as alleged here are almost identical to those considered by this court in connection with the case decided today, *Thoreson v. Milwaukee & Suburban Transport Corp.*[22] Here, as in that case, the allegations of negligence concerned the mother's alleged failure to properly supervise her child.

Our holding in *Thoreson* controls the disposition of this case. We do not think, at the demurrer stage, that the alleged acts of negligence on the part of Betty Howes come within either exception to the abrogation of the doctrine of parental immunity as spelled out in *Goller v. White*.[23] As pleaded these were not acts of the exercise of parental authority over the child, and thus are not within the first exception stated in *Goller*.[24] Neither did these acts involve the discharge of a parent's duty to provide food, clothing, housing, medical and dental services and other care. Accordingly, these acts are not

[22] Ante, p. 231, 201 N. W. 2d 745.

[23] (1963), 20 Wis. 2d 402, 122 N. W. 2d 193.

[24] *Id.* at page 413. *See Thoreson v. Milwaukee & Suburban Transport Corp., supra,* footnote 22.

within the second exception spelled out in *Golier*.[25] The trial court was in error in sustaining Betty Howes' demurrer.

*By the Court.*—Order affirmed as to Case No. 201; order reversed as to Case No. 202; cases remanded for further proceedings not inconsistent with this opinion.