AUSTIN, and another, Plaintiffs-Appellants, v. FORD MOTOR COMPANY, Defendant-Respondent: JACK WHITE, INC., Defendant.†

Supreme Court

*No. 75–776. Argued October 3, 1978.—Decided January 9, 1979.*
(Also reported in 273 N.W.2d 233.)

---

† Motion for reconsideration denied, with costs, on February 27, 1979.

630

632

For the appellants there was a brief and oral argument by *Edward Rudolph* of Milwaukee.

For the respondent there was a brief by *Merten, Connell & Sisolak, S.C.*, and oral argument by *Paul E. Schwemer*, all of Milwaukee.

HEFFERNAN, J. This case arose out of a fatal automobile accident which occurred on April 8, 1966. The action was brought by Michelle M. Austin and Michael A. Austin for the wrongful death of their mother, Barbara M. Austin. Facets of this action have been before this court on two previous occasions. In *Schnabl v. Ford Motor Co.*, 54 Wis.2d 345, 195 N.W.2d 602, 198 N.W.2d 161 (1972), this court reversed a summary judgment granted to Ford and remanded the case for trial. *Austin v. Ford Motor Co.*, 73 Wis.2d 96, 242 N.W.2d 251 (1976), held that the plaintiffs could appeal from the trial court's order granting a new trial, although the plaintiffs had moved for a new trial or, alternatively,

for a judgment on the verdict or a judgment notwithstanding the verdict.

The plaintiffs are now appealing from the order which granted a new trial on the issue of liability and ask that this court enter a judgment on the verdict as that verdict was in effect approved by the conclusions of the trial court.

Ford asserts that it is entitled to judgment on the verdict as returned by the jury.

No transcript of the trial testimony was filed by either party. Rather, the appeal is brought upon the record, a 562-page document consisting of the pleadings, affidavits, motions, orders and memoranda, and other documents which are largely procedural in nature. Jury instructions, the special verdict, and the final argument of defense counsel have been included in the record. It is apparent, however, that the facts on this appeal can only be derived from the pleadings and other portions of the record. Trial testimony is only available to this court to the extent that it is incorporated in the lengthy memorandum decision of the trial court.

Because neither party has furnished a transcript, we are obliged to accept the trial court's statement of facts as a verity. Basically, those facts, as revealed in the trial court's memorandum decision, show that a motorist testified that Barbara Austin, in her new 1966 Ford automobile, passed him when he was travelling at a speed of 65 to 70 miles per hour. He stated that Barbara Austin's Ford was going 20 to 25 miles per hour faster than he was. He stated that he saw the Ford car go off the road, roll two or three times, and land on its top. A state police officer who arrived on the scene shortly thereafter testified that he found a portion of the driver's seatbelt lying on the ground and a portion still attached to the front seat. Barbara Austin's body was found 10 to 15 feet away from the vehicle. The minor children,

Michelle and Michael, were passengers in the car at the time of the accident and were thrown from the vehicle.

The plaintiffs presented two witnesses whose testimony tended to prove that the defective seatbelt was a cause of death. A state police technician whose work included the examination of seatbelts stated that he made a microscopic examination of the belt. He found that the webbing had been irregularly cut through, making a total cut through one half or more of the belt. He stated that a sharp instrument was required to do the cutting and that there was nothing in the car which could have caused it. He also testified that the belt was severed over to one side. He testified as an expert witness that, as a general rule, it is safer to be restrained by a seatbelt in an accident, because it prevents the body from going forward or upward or from being thrown from the vehicle. He testified that to a reasonable probability the breaking of the seatbelt in this accident could have been a significant factor in making the accident a fatal one.

A licensed registered engineer testified that to a reasonable scientific probability there was a causal connection between the break in the seatbelt and the death and that, if the belt had not broken, the decedent would not have been injured. He stated that, in his opinion, Barbara Austin died after the seatbelt broke. He stated that the pre-existing cuts in the belt were close to the seat where they would not be felt or seen by the user of the belt.

The defendant presented no expert testimony on the causation issue but argued that there was substantial evidence that the impact of the accident was of sufficient force to cause Barbara Austin's death.

After a two-week trial, a special verdict was submitted to the jury. The jury found that Barbara Austin was wearing the seatbelt at the time of the accident; that the seatbelt, when it left the possession of Ford, was in a

defective and unreasonably dangerous condition; and that the defective condition of the seatbelt was a cause of Barbara Austin's death. Additionally, the jury found that Barbara Austin was negligent in the operation of the automobile in respect to speed and in respect to management and control. The jury also found that Barbara Austin's negligence was a cause of her death. It apportioned that negligence, attributing 35 percent to Ford Motor Company and 65 percent to Barbara Austin. In respect to damages, it determined that the pecuniary loss for the wrongful death was $47,500 and the damages for loss of society and companionship was $95,000.

The record before us shows that the jury was correctly and carefully instructed in respect to the burden of proof which each of the parties was required to assume. It was instructed that the plaintiffs had the burden of showing that the seatbelt was defective and dangerous when it left the possession of Ford and the burden of showing that the defective condition of the seatbelt, if found, was a cause of the death. The jury was instructed that the burden was on the defendant Ford to prove that Barbara Austin's negligence in driving the car was a cause of the death. The jury was specifically admonished: "You will note that the questions do not inquire as to the cause of the accident but to the cause of the death of Barbara W. Austin."

The trial court in its memorandum opinion pointed out that in its jury instructions it had emphasized the distinction between the cause of the death and the cause of the accident. The jury instructions emphasized that the proof of a negligently caused accident was not proof of the cause of death and that, once the plaintiffs had proved that the defective seatbelt was a substantial factor in the cause of death, the burden was upon the defendant to prove that any contributory negligence on the part of Barbara Austin was a cause of the death.

In its memorandum decision the trial court concluded that the plaintiffs had assumed the burden of showing that the defective and unreasonably dangerous seatbelt was a cause of Barbara Austin's death, but that the defendant had failed to assume its burden of proving that Barbara Austin's negligence was a substantial factor in causing her death. The trial court stated:

"The accident was a grievous one and the facts support a finding of negligent driving by the decedent. But the heart of the case is causation, not of the accident but of the death. In an action such as this, is it permissible inference or conclusion that decedent's negligent driving was a cause of her death as well as the extent to which it was a contributing factor? The court is persuaded to the conclusion that it is not.

". . .

"The court is of the further opinion that there is no competent credible evidence in the record to sustain a jury finding that decedent's negligence was a substantial factor in causing her death."

On the basis of a review of evidence, the trial court reached the conclusion that, "[T]he issue of decedent's negligence as a cause of *death* has not been tried."

The trial court in its memorandum opinion concluded that the plaintiffs had proved that the dangerously defective seatbelt was a cause of Barbara Austin's death, but the defendant had not proved that Barbara Austin's own negligence was a cause of her death.

In view of these findings, which we accept as a verity in the absence of a transcript, we would have expected the trial judge to strike the answer of the jury, which found that Barbara Austin's negligence was a cause of death and to amend the verdict to show that the only negligence proved was that of Ford Motor Company and, accordingly, order judgment for the plaintiffs in the appropriate amount of damages with no diminution for contributory negligence. Instead, the trial judge ordered:

"IT IS FURTHER ORDERED that there be a new trial in this case as between Plaintiffs and Defendant, Ford Motor Company only, on the issue of liability only, there being credible evidence to sustain the Verdict on the jury's findings as to damages. Said new trial ordered here is being ordered in the *interest of justice* for the reason that Ford Motor Company failed to discharge its burden of proof that the contributory negligence of the deceased in the operation of the accident vehicle (found by the jury to be 65%) was a substantial factor in causing the death in this case, there being no credible evidence in the record here to support such finding by the jury as expressed in its answer to Question No. 6 [setting the percentages of negligence] to the contrary, all without costs to any of the parties." (Emphasis supplied.)

Basically, under the facts, limited as they are as a result of the failure of either party to supply a transcript, this recitation is dispositive of the case. Where a trial court, in the exercise of discretion, has concluded that there is no evidence to support a jury finding and when no transcript has been furnished whereby the exercise of that discretion can be examined, an appellate court is compelled to accept that conclusion. On the basis of the record before us, we therefore hold that no evidence was presented upon which the jury could find that Barbara Austin's negligence was a cause of her death.

A different legal standard applies where a trial court concludes that the interest of justice requires a new trial. The discretion to order a new trial is circumscribed by statute, and the reasons for which a new trial may be ordered are set forth in sec. 805.15(1) and (2), Stats.[1] The trial court's memorandum opinion stated:

---

[1] "805.15 **New trials.** (1) MOTION. A party may move to set aside a verdict and for a new trial because of errors in the trial, or because the verdict is contrary to law or to the weight of evidence, or because of excessive or inadequate damages, or because of newly-discovered evidence, or in the interest of justice. . . .

"Said new trial ordered here is being ordered in the interest of justice for the reason that Ford Motor Company failed to discharge its burden of proof that the contributory negligence of the deceased in the operation of the accident vehicle . . . was a substantial factor in causing the death . . . ."

The opinion also recited that the issue of contributory negligence in respect to the cause of *death* had not been tried, but we know of no rule of law that permits a party to have a second opportunity to prove a crucial element of its case when that opportunity was afforded on the first trial and the element on which it failed to discharge its burden was clearly and unequivocally an issue at trial.

The instructions could not have been more explicit. The court emphasized that it was the duty of Ford Motor Company to show that the negligence of Barbara Austin was a cause of the death. It was clear that, in respect to the cause of death, the proof that the accident or upset of the car was caused by Barbara Austin's negligence was beside the point. It is apparent from the record that we have before us that the issue was indeed tried. Both the parties and the jury could not have been made more aware of the significance of the issue, and yet the defendant failed to assume its burden of proving that the contributory negligence of Barbara Austin was a cause of her death. It is not entitled to a second opportunity. Under the circumstances, the trial court was without authority to order a new trial in the interest of justice.

"(2) ORDER. Every order granting a new trial shall specify the grounds therefor. No order granting a new trial shall be valid or effective unless the reasons that prompted the court to make such order are set forth on the record, or in the order or in a written decision. . . ."

■

As we have stated above, this appeal came before this court on a partial transcript under the provisions of sec. 817.118, Stats. At oral argument, this court questioned defense counsel in respect to its failure to furnish portions of the transcript which would tend to prove that Barbara Austin's negligence was a cause of her death. Following argument, defense counsel has referred us to pages of the record which purport to show that, pursuant to sec. 817.118, the trial judge, upon defense counsel's motion, ordered the plaintiffs to include portions of the transcript tending to show Barbara Austin's contributory negligence in respect to the cause of death. Defense counsel moved for an order requiring the plaintiffs to include in the appeal record "a transcript of all of the testimony . . . relative to . . . contributory negligence," and that order was purportedly granted. It is apparent, however, that the trial court's memorandum decision that contributory negligence as a cause of death was not proved was a ruling adverse to the defendant. The obligation, therefore, was upon the defendant to have the necessary portion of the transcript furnished if it wished to attack the exercise of discretion of the trial court.

The controlling section of the statute is sec. 817.118 (2), Stats., which provides:

"(2) If a party adverse to the appellant desires a review of rulings adverse to him pursuant to s. 817.12 he shall serve on the parties adverse to him questions he will raise, such additional portions of the transcript and a list of additional exhibits he wishes to add to the appeal record and the provisions of sub. (1) shall then be followed. Such additions shall be paid for by the party raising the additional questions."

■

Moreover, it is obvious from the questions which were in fact submitted to this court that the plaintiffs on this

appeal did not seek to show that the defendant had proved contributory negligence as a cause of death. Nor did they wish to contest the apportionment of negligence. Rather, they assert, consistent with the trial judge's conclusion, that no causal contributory negligence was proved. On the appeal as finally submitted to this court, where the plaintiffs assert correctly that proof of negligence causing the accident is irrelevant to the cause of death, it is apparent that the burden of proving that Barbara Austin's own negligence caused the death, and not just the accident, was upon the defendant. For this court even to consider upsetting the trial court's exercise of discretion, the defendant had the responsibility of furnishing the relevant portions of the transcript. We find nothing in the order of the trial court which appropriately placed the burden of proving the defendant's case upon the plaintiffs. To the extent that the defendant construes the trial court's order as imposing such a burden, that construction is erroneous; and, in addition, it is irrelevant, because the question finally presented on appeal is different than that sought to be asserted originally by the plaintiffs.

It is boilerplate law that, when an appeal is brought on a partial transcript, the scope of the review is necessarily confined to the record before the court. *Herro, McAndrews & Porter v. Gerhardt,* 62 Wis.2d 179, 180, 214 N.W.2d 401 (1974); *Gray v. Wisconsin Telephone Co.,* 30 Wis.2d 237, 242, 140 N.W.2d 203 (1966); *Stelloh v. Liban,* 21 Wis.2d 119, 122, 124 N.W.2d 101 (1963). While the court can consider errors of law revealed in a trial court memorandum, the court will assume, in the absence of a transcript, that every fact essential to sustain the trial judge's exercise of discretion is supported by the record.

The trial court's conclusion that Ford failed to meet its burden of proof in respect to contributory negligence is based partially on law and partially on the factual record recited by the trial court, and those facts we must accept as a verity. The legal conclusion that the jury could not be permitted to infer the cause of death from the speed and management of the vehicle alone is correct, although such evidence could be used to prove the cause of the *accident*.

The effect of seatbelts in accidents of a particular type at a particular speed is not a question of fact to be determined by the average juror without benefit of specialized knowledge in the form of expert testimony. There was, however, expert testimony offered by the plaintiffs that Barbara Austin would have survived the accident had the seatbelt not been dangerously defective. *See, Bentzler v. Braun,* 34 Wis.2d 362, 388, 149 N.W.2d 626 (1967).

It is possible that, had the defendant discharged its duty on this appeal of furnishing a transcript, the transcript might reveal facts sufficient to support the jury's finding that Barbara Austin's contributory negligence was a cause of her death as well as of the accident. Without that record before us, however, it is impossible to consider, let alone accept, Ford's argument.

The trial court, with a full record before it and having heard the testimony, determined that the defendant had not come forward with proof of contributory negligence as a cause of death. The defendant could have produced the transcript if it wished to demonstrate to this court that it had in fact met its burden of proof. It did not; and, in the absence of such proof, this court will not reverse the trial court's conclusion that Ford failed to

produce any evidence to show that Barbara Austin's negligence was a cause of her death.

We recognize the problem faced by Ford in this lawsuit. In effect, Ford was asked to prove, if it wished to show contributory negligence as a cause of death, that the existing seatbelts were inadequate and would not have prevented death or serious injury. This, of course, would have put Ford in a posture contrary to that taken by most automobile manufacturers at the time this case was tried—that existing seatbelts were sufficient to prevent death or serious injury and that it was unnecessary for automobile manufacturers to install more sophisticated (and expensive) protective devices, such as accident-activated air bags.

Contributory negligence, if proved, is a defense in a strict liability case. We have so indicated in *Howes v. Deere & Co.*, 71 Wis.2d 268, 274, 238 N.W.2d 76 (1976); *Greiten v. LaDow*, 70 Wis.2d 589, 603, 235 N.W.2d 677 (1975); *Dippel v. Sciano*, 37 Wis.2d 443, 155 N.W.2d 55 (1967). In the latter case, both the principal opinion and the concurring opinion of Mr. Justice Hallows make it apparent that contributory negligence is a defense in a strict liability case and a comparison of the negligence of the tortfeasor and of the victim of the tort is appropriate. In a strict liability action for wrongful death, the negligence to be compared is the negligence causative of the death and not the negligence causative of the accident.

The plaintiffs on this appeal also object to the trial court's order which dismissed the cause of action for breach of warranty, because the notice given to Ford of the breach was inadequate. Whether the trial judge ruled correctly on the adequacy of notice need not be addressed,

for the breach of warranty action is irrelevant and extraneous to the plaintiffs' right of recovery.

The defendant also asserts correctly that, under the rules of procedure, where the appeal is taken from an order, prior intermediate orders are not before the appellate court. On appeals from *orders,* this court lacks jurisdiction to review a prior intermediate order. *United States v. Burczyk,* 54 Wis.2d 67, 194 N.W.2d 608 (1972).

Nevertheless, we believe it appropriate to discuss the applicability of the theory of breach of warranty where the cause of action is strict liability in tort. We conclude that, in view of this court's development of the jurisprudence of products liability, it is inappropriate to bring an action for breach of warranty where a tort remedy is sought. *See, Howes v. Hansen,* 56 Wis.2d 247, 201 N.W. 2d 825 (1972); *Dippel v. Sciano, supra;* and Prosser, *The Fall of the Citadel (Strict Liability to the Consumer),* 50 Minn. L. Rev. 791 (1966).

The warranty theory was a transitional rationale which appeared to be appropriate prior to the adoption of sec. 402A of the Restatement of *Torts* 2d and, in this state, before the definitive statement of this court in *Dippel v. Sciano, supra,* which set forth this court's position on strict liability.

A breach of warranty theory is encumbered with the ancient baggage of contract actions and should not be employed where the recovery is one for tort. As we have previously said, a warranty theory, if utilized or permitted, presents additional hurdles to the plaintiff. Where a strict liability action is alleged, the plaintiff need not prove specific acts of negligence by the defendant, and the defenses of notice of breach of warranty, disclaimer of warranty, and privity of contract are not

available. *Greiten v. LaDow,* 70 Wis.2d 589, 599, 235 N.W.2d 677 (1975).

It has long been basic to the pleading of a cause of action that a particular theory on which recovery may be based is not of great significance if the facts alleged or noticed are sufficient to state a cause of action or to assert a claim on which relief can be based. To assert a cause of action for breach of warranty or implied warranty in a tort action is not fatal to the pleader's cause, but the interest of justice and the adjudication of claims will be expedited if warranty claims, as such, are rejected and the case pursued as one for strict liability in tort. *See,* Prosser, Law of *Torts* (Hornbook series, 4th ed. 1971), sec. 98, p. 656.

The legal fiction of warranty which was useful in the transitional stage of the development of products liability law should be rejected; and where the action is one in tort, the only appropriate action is that of strict liability in tort, as set forth in *Dippel, supra.* As we said in *Dippel:*

"The third cause of action of the plaintiff's complaint is grounded upon a theory of an abolition of the rule of privity of contract in actions for breach of implied warranty. Because we have determined that physically injured users or consumers of unreasonably dangerous defective products should pursue their remedy under the rule of strict liability in tort, we conclude that the third cause of action in the complaint does not state facts sufficient to constitute a cause of action and the order sustaining the demurrer should be affirmed but with leave to plead over." *Id.* at 463.

Under the rationale of *Dippel,* therefore, where an action is brought in tort but denominated as breach of

implied warranty, the cause of action may be maintained if sufficient facts are alleged to state a claim for strict liability in tort, but the warranty action as such should be dismissed. In the event the facts alleged in the warranty action are insufficient, as *Dippel* makes clear, leave to plead over in strict liability in tort may be granted in an appropriate case.

While the earlier decision of this court arising out of this same accident indicated that an action for breach of warranty could be maintained under the wrongful death statute, it is apparent that *Schnabl v. Ford Motor Co.,* *supra,* treated warranty as another name for an action based on strict liability in tort. *Schnabl* cited *Dippel* as the controlling case. "Breach of implied warranty" where "strict liability in tort" is meant should be discarded from our legal vocabulary.

It is clear, therefore, that the trial court appropriately ruled that the plaintiffs could not encumber the case by trying it on the duplicative theories of strict products liability and breach of implied warranty.

It is also argued by the plaintiffs that Ford's attorney waived the statutory limit on damages for loss of society and companionship under the wrongful death statute, sec. 895.04(4), Stats. 1965, when he told the jury in closing argument that $70,000 was a fair amount of damages for the jury to allow. The wrongful death statute limits damages for loss of society to a sum not to exceed $3,000. Plaintiffs point out, and this argument is supported by the statement of the trial court's memorandum opinion, that it is not unusual for defense counsel to emphasize and inflate the damages that have the lowest statutory limit. The assumption of defense counsel, apparently, is that the jury will award an inordinately high amount for loss of society and companionship, which will in any event be cut back to the statutory limit

by the court, and will then fail to make an appropriate award for pecuniary loss. We cannot condone such trial tactics, for they mislead the jury. Because, however, the trial judge has indicated that the practice is widespread, we are satisfied that no sanctions are appropriate for what has heretofore been recognized by some as a legitimate trial tactic. Moreover, we believe that the problem posed here has been eliminated by the court's direction in *Peot v. Ferraro,* 83 Wis.2d 727, 746, 266 N.W.2d 586 (1978). We stated therein that, in a wrongful death action, the jury should be advised that a wrongful death action is statutory only and that the statutory recovery for pecuniary injury and for loss of society and companionship is limited by the statute to the amounts stated therein. The potential for misleading the jury in this regard will be eliminated by telling the jury what the maximum damages may be.

The basic proposition asserted by the plaintiffs in respect to waiver is untenable. The statute sets the limits on the amount of damages for pecuniary loss and the loss of society and companionship. The statutory limit imposed by the legislature cannot be waived by counsel. In the instant case the jury awarded damages for pecuniary loss in the amount of $47,500 and damages for the loss of society and companionship in the amount of $95,000. Under the 1965 version of the statute, which both parties to this appeal agree is applicable, the amount of the judgment must be limited to $22,500 for pecuniary loss, plus $2,000 for each of the minor children, plus $3,000 for loss of society and companionship. The judgment to be entered accordingly is for the amount of $29,500.

Because Ford's negligence in furnishing an unsafe and defective seatbelt was found to be a cause of the death of Barbara Austin and there was no evidence to show

that Barbara Austin's own negligence contributed to her death, the damage award is not to be diminished by an apportionment of negligence.

In conclusion we emphasize that the result in this case is inevitable, because the respondent Ford Motor Company foreclosed itself from attacking the trial court's findings when it failed to submit a transcript of testimony. This case, however, should not be construed as holding that one may in all cases operate a motor vehicle at a speed which causes an accident and normally expect all blame for the consequences to be attributed to a manufacturer's defect. Here, that result follows, because the trial court found that Ford failed in its proof that Barbara Austin's negligence was a cause of her death, and that finding cannot be attacked, because Ford has failed to furnish a transcript.

*By the Court.*—Order modified and, as modified, affirmed, with directions to enter judgment for the plaintiffs consistent with this opinion.

COFFEY, J. *(dissenting)*. The deceased was killed in a one car accident when the automobile she was driving at 90 m.p.h. left the road and rolled over. The jury found that her excessive speed was a cause of her injuries. How can it be said that her negligence in driving 90 m.p.h., which caused the accident, was not a cause of her death? The answer of the majority is that seat belts are designed to protect the wearer from injuries suffered in an accident which may be the wearer's fault.

The seat belt which the deceased was wearing, having been partially severed, previous to the impact was unable to withstand the impact of the accident at 90 m.p.h. The jury found the seat belt to be defective when it left the hands of the Ford Motor Co. As a policy matter, the majority has decided in this case that negligence as the cause of the accident (and, therefore, the injuries) of

the deceased will not be compared with the product liability imposed on the manufacturer for the failure of the seat belt. I have reservations about the wisdom of this policy. When applied to the theory that an injury would have been prevented if the injured party had worn a seat belt, its corollary will result in re-introducing a form of assumption of risk into Wisconsin law. However, it is not the wisdom of the policy from which I dissent but the method of its application.

If the trial court had ruled as a matter of law that the defective seat belt in this case was the sole cause of the death, because the accident did not produce an impact which exceeded the protective capabilities of a properly functioning seat belt, I would not quarrel with the ruling. This record, containing no transcript of testimony, would furnish no ground for reversal. If the trial court had accepted the jury's verdict that both the 90 m.p.h. speed of the deceased and the defective seat belt were contributing causes of death, I would affirm for the same reason. But the trial court made neither ruling. It granted a new trial in the interest of justice. Without a transcript against which to test that ruling, I am at a loss to understand how the majority can reverse.

The crucial question in this case was whether a properly functioning seat belt would have withstood the force of a crash at 90 m.p.h., protecting the deceased driver from death or serious injury as a consequence of her own negligence. This was a matter of proof for recovery as well as for defense. The trial court ruled that this question had not been fairly and fully litigated. Without a transcript, I cannot say the trial court was wrong.

It is the obligation of an appellate court to search for ways to affirm the trial court, not to act as a fact finder, independent of the record. In this case the search ought to end quickly, because there is no transcript. We should be assuming the answer to every question in favor of

the trial court that heard the testimony and was able to apprise the credibility of the witnesses. I would affirm the order granting a new trial in the interest of justice to determine whether operating an automobile at 90 m.p.h. is causal negligence as a matter of law.