**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**January 13, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2021AP1095**

**STATE OF WISCONSIN**

Cir. Ct. No.  **2019TR1045R**

**IN COURT OF APPEALS**
**DISTRICT IV**

IN THE MATTER OF THE REFUSAL OF TARAS O. HALIW:

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

TARAS O. HALIW,

    DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Columbia County: TODD J. HEPLER, Judge. *Affirmed.*

¶1    GRAHAM, J.[1]  Taras Haliw appeals a revocation judgment for unlawfully refusing to submit to a chemical test pursuant to Wisconsin's implied consent law, WIS. STAT. § 343.305.  Haliw contends that he did not drive his friend's truck on the night he was arrested, and that the circuit court erroneously determined that law enforcement had probable cause to arrest him for operating a motor vehicle while intoxicated (OWI) that night.  I conclude that the circuit court's probable cause determination is not erroneous, and therefore, I affirm the revocation judgment.

## BACKGROUND

¶2    It is undisputed that on March 8, 2019, Haliw and Edward Owerko traveled in Owerko's truck from Chicago to a youth camp in Baraboo, then to a bar in Lodi, and finally to Haliw's cabin in the Town of West Point.  There was a snowstorm that night, and by the time the men arrived at the cabin, the ground was covered by snowdrifts and ice.  After the men exited the truck, they struggled to travel the short distance down a slope to the cabin, and both fell numerous times in the snow and ice.

¶3    At some point, Haliw lost his keys to the cabin, and the men got separated.  Unbeknownst to Haliw, Owerko kicked in the cabin door.  Meanwhile, Haliw made his way to a house owned by a neighbor, Sharon Osborn.  Haliw was concerned about Owerko's safety, so Osborn called the police.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(c) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version.

¶4     Deputy Craig Crary and Deputy Mark Smit arrived at the scene in the early morning hours of March 9, 2019.  The officers' response to the call for help ultimately turned into the OWI investigation that led to Haliw's arrest and subsequent refusal to submit to a chemical test.  In addition to the refusal citation that is the subject of this appeal, the State also cited Haliw for OWI and prohibited alcohol concentration (PAC) offenses (Columbia County case Nos. 2019-TR-1025 and 2019-TR-3496) and charged him with operating a firearm while intoxicated (Columbia County case No. 2019-CM-218).  Those additional cases are still pending in the circuit court.

¶5     Haliw filed a motion captioned "Motion to Suppress – Unlawful Stop, Detention and Arrest" and asserted that the motion pertained to all four cases.[2]  In his motion, Haliw argued that the officers did not have probable cause to believe that it was Haliw (and not Owerko) who had driven the truck to the cabin that night.  Therefore, Haliw argued that the officers did not have probable cause to arrest him for OWI or ask him to submit to chemical testing.  The parties stipulated that, "for the purpose of judicial economy," the circuit court could use the determination it made about probable cause following the suppression hearing to resolve Haliw's anticipated defense to the refusal citation.  *See* WIS. STAT. § 343.305(9)(a)5.a. (allowing a person cited for unlawful refusal to submit to chemical testing to defend against revocation on the grounds that the person was not lawfully arrested for an OWI-related offense).[3]

---

[2] On appeal, the parties dispute whether suppression is an appropriate remedy for purposes of a refusal hearing.  I briefly address this dispute in the discussion section below.

[3] Throughout this opinion, I use the term "OWI-related offense" to refer to a violation of any of the offenses, including WIS. STAT. §§ 346.63(1), (2), (2m), (6), 940.09, and 940.25, that are enumerated in WIS. STAT. § 343.305(3)(a) and (9)(a)5.a.

3

¶6    The circuit court held an evidentiary hearing that commenced on February 28, 2020, and concluded on September 9, 2020.[4] Deputies Crary and Smit testified about their investigation, providing their reasons for believing that Haliw and Owerko were both intoxicated and that Haliw had driven the truck to the cabin that night. Crary testified that he observed footprints leading from the driver's side door of the truck to a body impression in the snow where it appeared that somebody had fallen, and next to the body impression, he observed a backpack containing keys and pill bottles with the name "Taras" on them. Crary testified that he interviewed Owerko, who denied driving the truck to the cabin.[5] Smit testified that he interviewed Haliw, who said he drove himself and Owerko home from the bar.[6] Smit and Crary both testified that after Haliw realized that the officers had commenced an OWI investigation, Haliw hesitated and then told Crary that he had not been driving that night.

¶7    Owerko, Haliw, and Osborne (the neighbor) also testified at the hearing. Owerko and Haliw both testified that Owerko was the sole driver that night. Owerko testified that he drove from the bar to the cabin and that he did not recall telling Crary that he had not been driving that night. Haliw testified that,

---

[4] The circuit court also took testimony on July 23, 2020. However, the transcript from the proceedings on July 23, 2020, is not part of the appellate record and, as discussed below, other transcripts are likewise missing from the record. *See infra* n.8. I remind Haliw's appellate counsel that the appellant is responsible for ordering all necessary transcripts and making them part of the record, *see State v. McAttee*, 2001 WI App 262, ¶5 n.1, 248 Wis. 2d 865, 637 N.W.2d 774, and that, when material is missing from the record, an appellate court will assume that the missing material would support the facts essential to the circuit court's decision, *see Austin v. Ford Motor Co.*, 86 Wis. 2d 628, 641, 273 N.W.2d 233 (1979).

[5] According to Crary's testimony, Owerko may have also told him that it was Haliw who had been driving that night. However, Crary's testimony was somewhat ambiguous on this point, and I do not rely on it for purposes of this opinion.

[6] Smit testified that the audio and video from his body camera were not properly saved.

although his memory of the night in question was "foggy" in some places, he never told Smit that he drove Owerko's truck. Osborn testified that she did not know who was driving Owerko's truck that night, but that she was present when Smit was interviewing Haliw and did not hear Haliw say that he had been driving.

¶8 The circuit court issued a written order denying the motion to suppress. In the order, the court explained that "this case comes down to credibility determinations." The court expressly stated that it did not find Owerko's testimony credible. By contrast, the court appeared to find plausible Deputy Smit's testimony that Haliw said he had driven the truck to the cabin that night; Deputy Crary's testimony that Owerko denied being the driver; and both officers' testimony that Haliw changed his story after he realized that he was being investigated for OWI. As the court recognized, the evidence might be such that, during a trial on the OWI and PAC charges, the State "may struggle to prove beyond a reasonable doubt" that Haliw was actually the driver that night. Even so, the court explained, "the purported statements made by Mr. Owerko, alleged admission and recantation of driving by Mr. Haliw and other circumstances attendant thereto established sufficient basis for the arrest."[7] Although the court did not expressly address the implication of this determination on the refusal proceeding, it appears that, consistent with the parties' pre-hearing stipulation, the court would use its probable cause determination to decide the merits of Haliw's anticipated defense in the refusal hearing.

---

[7] Although the circuit court's order mentions reasonable suspicion in passing, it is undisputed that probable cause is required for the arrest. Neither party suggests that the court applied an incorrect legal standard. But even if it did, any error would not affect my determinations on appeal since I independently review the application of the probable cause standard to the facts. *State v. Woods*, 117 Wis. 2d 701, 710, 345 N.W.2d 457 (1984).

¶9      The refusal hearing occurred on May 24, 2021, and the circuit court subsequently entered a revocation judgment finding that Haliw unlawfully refused to submit to an implied consent test.[8]  Haliw appeals.  As mentioned above, his OWI, PAC, and firearm cases remain pending in the circuit court.

## DISCUSSION

¶10      When a law enforcement officer arrests a person for an OWI-related offense, the officer may "request the person to provide one or more samples of [their] breath, blood or urine" for the purpose of chemical testing.  WIS. STAT. § 343.305(3)(a).  If the person refuses to submit to chemical testing, they are informed of the State's intent to immediately revoke their operating privileges, § 343.305(9)(a), and that they may request a refusal hearing in court, § 343.305(9)(a)4.  The issues that a defendant is permitted to raise during a refusal hearing are limited by statute to those set forth in § 343.305(9)(a)5.  One of the issues that may be raised as a defense is "[w]hether the officer had probable cause to believe the person was driving or operating a motor vehicle while under the influence of alcohol [or committed another OWI-related offense]" and "whether the person was lawfully placed under arrest for [an OWI-related offense]."  *See* § 343.305(9)(a)5.a.; *see also* ***State v. Anagnos***, 2012 WI 64, ¶27, 341 Wis. 2d 576, 815 N.W.2d 675.

¶11      Haliw contends that the officers did not have probable cause to arrest him for an OWI-related offense.  Therefore, he argues, the arrest was unlawful,

---

[8] The transcript of the refusal hearing is not included in the record on appeal.  Therefore, the record does not reveal what, if any, defenses Haliw raised during the refusal hearing, nor does it reveal the circuit court's basis for rejecting any such defenses.

and I should reverse the circuit court's denial of Haliw's motion to suppress. In their appellate briefing, the parties dispute whether a court can "suppress" evidence for purposes of a refusal hearing.[9]

¶12    Following our supreme court's guidance in ***Anagnos***, I conclude that the parties' dispute about the application of the exclusionary rule in this case is "somewhat beside the point." *See **id.***, ¶25 n.7. The question on appeal is not whether evidence of Haliw's arrest and refusal should have been suppressed under the exclusionary rule, *see **id.***, but rather, "[w]hether the officer had probable cause to believe that [Haliw] was driving or operating a vehicle while under the influence of alcohol … and whether [Haliw] was lawfully placed under arrest for violation of [an OWI-related offense]," WIS. STAT. § 343.305(9)(a)5.a. If the answer to either or both questions is no, then the court "shall order that no action be taken on the operating privilege on account of the person's refusal to take the test in question." WIS. STAT. § 343.305(9)(d); *see also **Anagnos***, 341 Wis. 2d 576, ¶25 n.7.

¶13    Accordingly, I reject Haliw's assertion that, if the officers did not have probable cause to arrest Haliw for an OWI-related offense, the proper remedy would be to reverse the circuit court's order denying Haliw's motion to suppress. Instead, the proper remedy would be to reverse the revocation judgment

---

[9] The State points to a concurring opinion in ***State v. Anagnos***, 2012 WI 64, ¶68, 341 Wis. 2d 576, 815 N.W.2d 675 (Ziegler, J., concurring), and argues that "there is no statutory authority or procedure that would allow ... a defendant to suppress evidence prior to a refusal hearing." Haliw disagrees. He asserts that "evidence ... gathered as the result of an unlawful arrest in violation of a defendant's Fourth Amendment rights" is "the fruit of the poisonous tree and should be suppressed for any further use in any case, including a refusal hearing." Yet Haliw cites no authority for the proposition that suppression is a proper remedy for purposes of a refusal hearing.

and remand with instructions to enter an order dismissing the refusal proceeding pursuant to WIS. STAT. § 343.305(9)(d).

¶14     Having addressed that threshold dispute between the parties, I turn to address the central issue in this case:  whether Haliw was lawfully arrested for an OWI-related offense.  On appeal, Haliw does not dispute that the officers had probable cause to believe that he was intoxicated, and further, that either Haliw or Owerko had recently been driving.  Here, the question turns on whether the officers had probable cause to believe that it was Haliw who had driven Owerko's truck from the bar to the cabin that night.

¶15     Wisconsin cases provide the proper framework for analysis in a situation in which the driver's identity is disputed during a refusal hearing, and a defendant such as Haliw argues that some other person was the driver.  *State v Nordness*, 128 Wis. 2d 15, 35, 381 N.W.2d 300 (1986).  In such cases, the court conducting the refusal hearing is limited to considering whether the officers had probable cause to believe that Haliw was the driver.[10]  *Id.* at 27 & 36.  The court need not—and indeed, should not—decide whether the State has proven to a "reasonable certainty" that Haliw was "actually" the driver.  *Id.* at 26-27 & 36; *see also id.* at 28-29 ("It is not necessary to find that the defendant was the actual driver in order to find that the police officer had probable cause to believe he was driving while under the influence of alcohol.... Probable cause may exist in the law even when the actual fact does not.").

---

[10] "Probable cause" is based on the "totality of the circumstances within the arresting officers' knowledge at the time of the arrest." *State v Nordness*, 128 Wis. 2d 15, 35, 381 N.W.2d 300 (1986).  It is "that quantum of evidence … that would lead a reasonable law enforcement officer to believe that the defendant was operating a motor vehicle while under the influence of an intoxicant." *State v. Lange*, 2009 WI 49, ¶19, 317 Wis. 2d 383, 766 N.W.2d 551.

¶16    Wisconsin cases have explained that "[t]he State's burden of persuasion at a refusal hearing is substantially less than at a suppression hearing." *State v. Wille*, 185 Wis. 2d 673, 681, 518 N.W.2d 325 (Ct. App. 1994). During a suppression hearing, the court must "choose[] between conflicting versions of the facts" and "necessarily determines the credibility of the officers and other witnesses." *Id.* at 682 (citing *State v. Pires*, 55 Wis. 2d 597, 602-03, 201 N.W.2d 153 (1972)). By contrast, in a refusal hearing, the issue is limited to whether "the officer's account is plausible, and the court will not weigh the evidence for and against probable cause or determine the credibility of the witnesses." *Wille*, 185 Wis. 2d at 681 (citing *Nordness*, 128 Wis. 2d at 36).

¶17    In this case, the officers' testimony was sufficient to establish that they had probable cause to believe that Haliw had driven from the bar to the cabin that night. The facts relied on by the circuit court—Owerko's purported denial that he was the driver, Haliw's alleged admission and later recantation of driving, and the "other circumstances attendant thereto," including Crary's testimony that he followed footprints from the driver's side of the truck to a body impression in the snow and pill bottles with Haliw's name—were certainly "plausible." *See Nordness*, 128 Wis. 2d at 36.

¶18    Haliw does not meaningfully argue that these facts lack plausibility, or that the plausible facts collectively amount to probable cause. Rather, he argues that the circuit court should have credited Owerko's testimony and should not have credited the officers' testimony. I reject this argument for two reasons. First, an appellate court will not normally substitute its judgment about the credibility of witness testimony for that of the circuit court. *State v. Echols*, 175 Wis. 2d 653, 671, 499 N.W.2d 631 (1993). Second, as explained above, Wisconsin cases have stated that, in the context of a refusal hearing, the court will not decide the case

based on credibility determinations. *Wille*, 185 Wis. 2d at 681 (citing *Nordness*, 128 Wis. 2d at 36).

¶19    Haliw also argues that other inferences could be drawn from the testimony introduced at the hearing.[11]    However, as the circuit court itself explained, the contrary evidence may cause the ultimate fact finder to conclude that the State has not proven Haliw's guilt beyond a reasonable doubt if the OWI and PAC charges proceed to trial.  Yet, that is not the standard applicable to Haliw's defense to the refusal citation.  *See* **Wille**, 185 Wis. 2d at 681 (citing *Nordness*, 128 Wis. 2d at 36, for the proposition that a court will not weigh the evidence for and against probable cause during a refusal hearing).

¶20    Finally, Haliw characterizes the officers' investigation as "shoddy," and argues that they could have done more to verify which of the men was the driver.  But that is not the question.  The question is whether the plausible facts amounted to probable cause, not whether the officers could have obtained additional evidence.  Again, any deficits in the investigation might lead the ultimate fact finder in the OWI and PAC trials to have a reasonable doubt, but they do not undermine my conclusion that, based on the totality of the circumstances

---

[11] Notably, Haliw takes some of this testimony out of context and omits important details.  For example, Haliw makes much of Deputy Crary's testimony that he followed a set of footprints that originated from the driver's side of the truck and eventually led Crary to the cabin where he found Owerko.  According to Haliw, this "physical evidence, the significance of which should have been obvious, pointed directly to Mr. Owerko having been the operator of the vehicle."  Yet, Haliw never acknowledges Crary's testimony that the footprints from the driver's side door led to a body impression in the snow where Crary found a backpack that contained pill bottles with Haliw's medications.  Nor does he acknowledge Crary's testimony that the footprints he followed from the driver's side of the truck joined with a second set of footprints before the tracks reached the cabin.  Indeed, Haliw testified that he and Owerko reached the cabin together, after which Haliw discovered that he had lost the keys to the cabin and continued on alone to Osborn's house.  When Crary's testimony is considered in this context and as a whole, it does not support Haliw's assertion that the physical footprint evidence pointed to Owerko as the driver.

known to the officers on the night in question, there was probable cause for the officers to believe that Haliw drove from the bar to the cabin that night.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.