COURT OF APPEALS
DECISION
DATED AND FILED

July 6, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1648**

STATE OF WISCONSIN

Cir. Ct. No. 2020CV84

IN COURT OF APPEALS
DISTRICT III

LOWER PINE LAKE PARTNERSHIP, A WISCONSIN GENERAL PARTNERSHIP,

    PLAINTIFF-RESPONDENT,

  V.

ROBERT E. ERICKSON,

    DEFENDANT-APPELLANT,

DIANE K. ERICKSON, THOMAS A. MCARDLE, DELORIS F. MCARDLE, DARLENE A. MYERS AND ESTATE OF THOMAS H. MYERS, DARLENE MYERS, EXECUTRIX,

    DEFENDANTS.

        APPEAL from a judgment of the circuit court for Polk County: DANIEL J. TOLAN, Judge. *Affirmed*.

        Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Robert E. Erickson, pro se, appeals from a summary judgment granted in favor of the Lower Pine Lake Partnership (the Partnership),[1] terminating his interest in the Partnership after a payment dispute. Erickson claims that there are genuine issues of material fact that preclude summary judgment in this case, and he seeks a trial before a jury. For the reasons that follow, we affirm the circuit court's grant of summary judgment in favor of the Partnership.

## BACKGROUND

¶2 This appeal arises out of a lawsuit filed by the Partnership to correct a defect in title to real property owned by the Partnership and for a judgment declaring that Robert and Diane Erickson's unit was properly terminated from the Partnership. The following undisputed facts are taken from the complaint and the parties' submissions on the Partnership's summary judgment motion.

¶3 The Partnership was formed by agreement on December 31, 1989, to invest in and own a lake cabin for the Partnership's use on real property (the property) located in Polk County, Wisconsin. When created, the Partnership was composed of six individuals: Diane Erickson, Robert Erickson, Deloris McArdle, Thomas McArdle, Darlene Myers, and Thomas Myers.[2] Under the agreement, a

---

[1] The plaintiff in this case is Lower Pine Lake Partnership, a Wisconsin general partnership. The defendants are current and former individual partners in the Partnership.

[2] Thomas Myers is now deceased, and Darlene, his spouse, is the executrix of his estate. For ease of reading, we will refer to Robert Erickson as "Erickson" and to the remaining defendants by their first names or by their partner unit.

"Partner/family unit" is defined as (1) the "[h]usband and wife assigned to this agreement," (2) the "[s]urviving spouse," or (3) the "[c]hildren of 1) or 2) wanting to be partners." The agreement provides that "[e]ach partner/family unit shall participate in the management and conduct of the affairs of the Partnership. Each partner/family unit has one vote (1/3 ownership in Partnership) on all matters brought before the Partnership."[3]

¶4 The Partnership purchased the property from George and Anna Grotenhuis on December 31, 1989, pursuant to a land contract.[4] The contract named the Partnership as the purchaser as follows: "Lower Pine Lake Partnership (Bob and Diane Erickson, husband and wife, Tom and Deloris McArdle, husband and wife, and Tom and Darlene Myers, husband and wife)." On June 23, 2004, upon full performance under the land contract, George executed a warranty deed conveying the property to the Partnership. However, the deed erroneously named the Partnership *and* the individual partners as grantees by omitting the parentheses. The Partnership alleged in its complaint, "The intent of the Contract was for the Partnership to purchase the Property as a Partnership entity and have the Property owned solely by that entity upon completion of the Contract."

¶5 The deed was drafted by an attorney, who later executed a notarized, sworn correction instrument that was recorded with the Polk County Registrar on April 17, 2019, stating that the omission of the parentheses around the names of the individual partners was in error. According to the complaint, "[t]he

---

[3] For ease of reading, we have capitalized "Partnership" when referenced in quotations throughout the decision.

[4] Diane, Deloris, and Darlene are sisters and are the daughters of George and Anna Grotenhuis. Thomas and Erickson are Deloris's and Diane's spouses, respectively.

Partnership requested an Owner and Encumbrances Report on the Property from Polk County Abstract," which determined that the error "amounted to a defect in the title and would prevent a title company from issuing title insurance on the property" and "[t]he abstractors did not consider the Correction Instrument as sufficient to correct the defect." "The abstracting company stated that all of the partners would be required to disclaim their individual interests in the Property in order to cure this title defect." Erickson refused to do so.

¶6     In June 2017, prior to the attempted deed correction, a hailstorm damaged the property. The Partnership filed an insurance claim, and State Farm Insurance issued a check for $5,627.18 on July 6, 2017, to cover the damage to the lake cabin's roof and gutters. The Partnership voted at a February 2018 meeting to accept a bid to repair the roof and gutters, and the repair work was done in March 2018. Due to the problems with the title, the insurance check was issued to the individual partners—rather than the Partnership—and the individual partners were asked to endorse the check so the Partnership could deposit the funds and use them for the repairs. Erickson refused to endorse the check, stating in his affidavit filed in response to the Partnership's summary judgment motion that the contractor had done substandard work, as the gutters were not installed properly or with the right materials, and the contractor had not cleaned up after his work on the property.

¶7     Erickson told the Partnership to "dispute the bill." Instead, at a May 27, 2018 meeting, the Partnership voted to accept and approve the bill for the repairs. Despite multiple requests from unit members and the Partnership, Erickson refused to endorse the insurance check or pay his portion of the repairs and refused to return the check to the Partnership. Eventually, the other partners

paid for the repairs directly. Erickson did not contribute any funds toward the repairs.

¶8    At a September 2, 2018 Partnership meeting (the Labor Day Meeting), the Erickson unit was removed from the Partnership based upon several violations of the agreement. Specifically, the Partnership stated that: (1) Erickson had not attended any Partnership meetings in 2017 and 2018, and Diane did not attend the Labor Day Meeting; (2) Erickson was elected to serve as secretary of the Partnership at the September 2016 meeting, and he did not fulfill his duties as secretary; (3) Erickson's conduct violated section (16)d. of the Partnership agreement,[5] which provides that "[n]o partner shall … act detrimental to the best interest of the Partnership which would make it impossible to carry out the business of the Partnership"; (4) Erickson "[f]ail[ed] to sign and forward the [i]nsurance [c]heck so that the Partnership can pay for the [repair] work completed"; and (5) Erickson, as a result of retaining the check and not paying the Erickson unit's share of the repairs, had become delinquent in making requested payments for over six months and was also subject to an interest penalty.

¶9    The motion to remove the Erickson unit from the Partnership passed with a unanimous vote. No one from the Erickson unit attended the Labor Day Meeting. The Partnership now claims that Erickson has refused to "disclaim an individual interest in the property," refused to remove his personal effects from the property, and refused to acknowledge that he is no longer a member of the Partnership.

---

[5] The minutes of the Labor Day Meeting incorrectly cite this section as "Article 15 Section E." There is no such section or article in the Partnership agreement. The Partnership explained that the correct citation is to section (16)d.

¶10    The Partnership filed this action on March 6, 2020. Counts one, two, and three of the complaint relate to the title issue and seek declaration and enforcement of the Partnership's interest in real property, reformation of deed, and equitable relief under WIS. STAT. § 706.04 (2019-20),[6] respectively. Count four requests a judgment declaring that the Erickson unit has had its Partnership interest terminated.

¶11    This case was filed as the COVID-19 pandemic was beginning to affect the United States. Early in the proceedings, on March 30, 2020, Erickson sought an indefinite extension of the time to file his answer to the complaint, stating that "[i]n order to reply to the summons and to make a counter claim I need access to my files." At the time, Erickson was living in Hawaii, while his files were at his home in Minnesota. Erickson explained that he did "not want to put [his] health at risk by traveling to seek records to respond to a summons," as the Center for Disease Control and "other health and government officials" were recommending limited travel during the COVID-19 pandemic. Erickson refused any suggestion that Diane could collect his files or that he hire an attorney to do so.

¶12    When Erickson failed to file an answer to the complaint, the Partnership filed a motion for a default judgment against Erickson. After a hearing on the motion, the circuit court denied the Partnership's request for a default judgment and entered an order enlarging the time for Erickson to file an answer until July 2, 2020. Erickson ultimately filed a timely answer.

---

[6] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶13     The Partnership then filed a motion for judgment on the pleadings. At a nontestimonial hearing on August 12, 2020, after reviewing the pleadings and the arguments of the parties, the circuit court granted judgment on the pleadings to the Partnership on Counts one, two, and three of the complaint.[7]  *See* WIS. STAT. § 802.06(3).

¶14     As to Count four, the declaratory judgment count, the circuit court sua sponte converted the motion for judgment on the pleadings to one for summary judgment, took the motion under advisement, and entered an order granting the parties twenty days to file proper affidavits relating to the motion.[8] *See* WIS. STAT. § 802.06(3).   The court also specifically addressed Erickson's continued argument that the COVID-19 pandemic prevented him from flying to review his records:

> It is true that we are in the midst of a pandemic.  It is true that the case numbers confirming positive COVID tests in Wisconsin are rising.  Mr. Erickson is located out in Hawaii.  And we've been through this before.  Where I granted leave or extended the time to file an answer and ultimately set a deadline for an answer to be filed which Mr. Erickson complied with.  There are a multitude of ways where he could get information as well as records.  And that's been pointed out.  The point being—and I'm not inviting comment—is that I cannot continue this case indefinitely due to the pandemic.

---

[7] Erickson does not appear to challenge the circuit court's grant of judgment on the pleadings as to these counts.  Accordingly, we will not address that issue further.

[8] At this point, a question arose regarding whether the motion for judgment on the pleadings was against the Erickson unit or Erickson alone.  Diane's attorney argued that the motion was only against Erickson, and counsel for the Partnership concurred, explaining that "[w]e have only filed a motion against Mr. Erickson.  [Counsel has] had discussions and all of the other parties are willing to settle this matter if Mr. Erickson's not involved."

¶15 After the August 12, 2020 hearing, Erickson filed a multitude of documents, including a "counterclaim" against the codefendants but not against the Partnership; a cross-claim against the codefendants; a motion for summary judgment on his counterclaim; and a motion to dismiss count four of the amended complaint. Erickson, the Partnership, and some of the other codefendants also filed a number of motions and various responsive filings. On September 1, 2020, Erickson filed his affidavit opposing the Partnership's motion for summary judgment.

¶16 The Partnership responded with a motion to strike the counterclaim filed against the individual defendants and to dismiss it for failure to state a claim, arguing, among other things, that the counterclaim was filed too late and was not filed against the Partnership, which was the plaintiff. On February 23, 2021, the circuit court held a hearing on the parties' various motions. A transcript of the hearing is not included in the record, but the court's order states that it dismissed Erickson's counterclaim "due to the insufficiency of pleading a statutory basis to support the Counterclaim as well as a failure to allege an adequate factual basis for the Counterclaim." The court also denied Erickson's motion to dismiss Count four of the amended complaint.

¶17 The Partnership's summary judgment motion was finally heard by the circuit court on June 11, 2021.[9] At the nontestimonial hearing, the court

---

[9] A hearing on the summary judgment motion was scheduled for December 16, 2020, but Erickson did not initially appear because he did not receive notice. The circuit court reached Erickson on the phone, and it noted on the record that Erickson had "not been at the address in Hawaii for the last two weeks. He's required to provide an updated address for mailing notice to the Clerk of the Circuit Court. He does not have his records available to him today for argument on the motion." The court then adjourned the hearing.

detailed the history of the case. Although it had previously dismissed Erickson's counterclaim and denied his motion to dismiss, the court also noted that it had set a deadline of July 2, 2020, for the filing of pleadings, and a dispositive motions deadline of October 31, 2020, meaning that in addition to being without a factual and legal basis, Erickson's counterclaim and dismissal motion were also untimely and, accordingly, stricken and dismissed.

¶18     Further, after considering the summary judgment materials, the circuit court concluded that the Partnership agreement in effect was the agreement as amended on September 13, 2015; that the "bulk of [Erickson's] affidavit is legal conclusions and opinions" and would not be "considered by the Court as material issues of fact"; and that the Partnership properly voted, pursuant to the terms of the agreement, to remove the Erickson unit from the Partnership. The court also dismissed all other pending motions. Erickson appeals.

## DISCUSSION

¶19     On appeal, Erickson makes three arguments: (1) the COVID-19 pandemic "made it nigh impossible for Erickson to mount a proper defense"; (2) [the circuit court] "troll[ed]" Erickson; and (3) "[t]he ruling errors should have never occurred."[10]  In contrast, the Partnership argues that

---

[10] Erickson's briefing and arguments before this court fail to comply with numerous Rules of Appellate Procedure. *See* WIS. STAT. RULE 809.19(1). Specifically, Erickson's briefs do not contain appropriate citations to the record. *See* RULE 809.19(1)(d), (e). Further, aside from an incorrect citation to **Wisconsin Legislature v. Palm**, 2020 WI 42, 391 Wis. 2d 497, 942 N.W.2d 900, and WIS. STAT. ch. 252, in support of his argument surrounding the COVID-19 pandemic, Erickson fails to provide any legal citations to support his claims.

(continued)

> [t]he facts here are quite simple. As he has admitted in his brief, Erickson refused to pay his share of the cost of repair for the storm damage to the Partnership property and took and kept a $5000 insurance check intended to pay for the repairs. As a result of these actions, he was expelled from the Partnership.

According to the Partnership, as there are no issues of material fact in dispute, the circuit court properly granted summary judgment on its declaratory judgment claim seeking a determination that the Erickson unit lawfully had its interest in the Partnership terminated. For the reasons that follow, we agree with the Partnership.

¶20 Our review of a circuit court's summary judgment decision is de novo, applying the same methodology as the circuit court. *Springer v. Nohl Elec. Prods. Corp.*, 2018 WI 48, ¶9, 381 Wis. 2d 438, 912 N.W.2d 1. "The methodology governing summary judgment is well-established and we need not repeat it in its entirety." *Progressive N. Ins. Co. v. Jacobson*, 2011 WI App 140, ¶7, 337 Wis. 2d 533, 804 N.W.2d 838. Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2).

---

Erickson is a pro se litigant; however, we generally hold pro se litigants in civil matters to the same appellate rules as attorneys. *See Waushara County v. Graf*, 166 Wis. 2d 442, 451-52, 480 N.W.2d 16 (1992). We will address Erickson's arguments as best we can discern them, but we have no duty to address undeveloped arguments, to develop arguments on a party's behalf, or to search the record to look for evidence to support Erickson's arguments. *See Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82; *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in [the record].").

¶21    We begin with the real substance of the action before us: Did the circuit court err in determining on summary judgment that the Erickson unit was properly disassociated from the Partnership based upon Erickson's violation of the agreement?  Based on our review of the record, we agree that the court properly granted summary judgment in favor of the Partnership.

¶22    The Partnership agreement[11] provides a mechanism for removal of a partner or partner unit under section (20).  It provides in relevant part that "[i]f a partner/s becomes delinquent for three months[,] the non-delinquent partner/s may exercise section (11)[12] as if the delinquent partner/s where [sic] withdrawing from the Partnership.  Section (7) [requiring a two-thirds affirmative vote of the partners] shall not apply for delinquencies."  The minutes of the Labor Day Meeting clearly state that Thomas "made a motion to Expel" the Erickson unit

---

[11] The Partnership agreement was amended on September 13, 2015.  The circuit court determined that the agreement as amended on September 13, 2015, was the agreement in effect at the time the Erickson unit was disassociated.  Erickson does not appear to develop an argument in opposition, only noting the existence of an alleged "invalid Partnership agreement dated October 9, 2016."  We agree with the circuit court that the agreement as amended on September 13, 2015, is the operative Partnership agreement.

[12] Section (11) provides:

> A partner may withdraw from the Partnership by giving written notice to the other partners of his [or her] intention to withdraw.  Remaining partners shall have eighteen (18) months to purchase the withdrawing partner's share.  Payment to the withdrawing partner shall be at his [or her] original investment plus his [or her] share of principle payments for the first two years.  After two years, a buyout price may be negotiated among the partners.  The withdrawing partner may have a market evaluation or an appraisal done at his [or her] expense.  The remaining partners have the first option to buy the withdrawing partner's share at an amount not greater than the market evaluation or appraisal, less an amount equal to what the realty costs would be if a sale of the property actually took place.  The county assessors [sic] estimated market value may be used.

from the Partnership. That vote was "passed unanimously" by those in attendance—namely, the McArdle unit and the Myers unit.

¶23 The Partnership argues that Erickson violated the Partnership agreement by (1) "taking and keeping the insurance check issued to the partners as reimbursement for storm damage repairs," (2) "refusing to contribute to the cost of repairs," and (3) "refusing to compensate the other partners for his share of the costs after they advanced funds to accomplish the repairs." Section (6) of the Partnership agreement states: "Each partner agrees to pay one-third of the homeowner insurance, property taxes, utility costs and [Partnership] related expenses as notified by the managing partner." Section (8) provides, in pertinent part, that

> [t]he duties of the managing partner shall be to receive payments from the partners or others, to make the mortgage payments, to make necessary disbursements, and to keep books of account for the Partnership. In addition, the managing partner shall report at each meeting to the Partnership as to its financial condition.

Thomas was the managing partner of the Partnership, and he reported the information pertaining to the roof and gutter repairs at the February and May 2018 meetings. At each meeting, the Partnership unanimously voted to approve and accept the repair costs, and Diane—representing the Erickson unit—was in attendance. Erickson was not in attendance, and he disagreed with the Partnership's decision.

¶24 There does not appear to be any dispute as to the material issues of fact on the question of whether Erickson violated the Partnership agreement and was more than three months delinquent on payments. The circuit court concluded that "Mr. Erickson has admitted that he kept the insurance reimbursement check;

has admitted that he contributed nothing toward the repairs to the storm damage to the Partnership property; and, further admitted that he had refused to contribute to repairs despite request from the other partners."

¶25     Erickson does not dispute any of these material facts, only noting in his brief-in-chief that "[t]his is refuted by my email dated May 18, 2018 where I describe how the payments will be made because the McArdles and Myers cannot be trusted to handle the money." Erickson admits that "[o]n May 18, 2018, after we had received the bill, I wrote to the partners that I would handle the payment of the bill because the other partners could not be trusted to handle the payment because of previous actions and agreement violations." Erickson's argument does not refute the Partnership's claim that he kept the check and did not pay for any of the repairs. Further, as sections (6) and (8) of the Partnership agreement make clear, Erickson's proposed process—wherein he handles the payments—fails to comply with the terms of the Partnership agreement.

¶26     Erickson also argues in his reply brief that he was not three months delinquent as required by section (20) because an email from Thomas showed the bill had not been paid as of June 22, 2018. As discussed above, however, undisputed evidence shows that the work was completed in March 2018. The Partnership accepted and approved the bill at the May 27, 2018 meeting—more than three months before Erickson's removal from the Partnership on September 2, 2018—and Erickson continued to retain the insurance check that he had in his possession since 2017. Erickson's retention of the insurance check prevented the Partnership from using the insurance money to pay for the repairs at an earlier time. Accordingly, when the Partnership actually paid the bill is not a material fact.

¶27 Thus, there is no material question of fact that Erickson violated the agreement by keeping the insurance check, refusing to endorse it, and failing to pay his share of the money for the damage or reimburse the other partners when they paid for the repairs out of pocket. Although Erickson disagreed with who would make the payment or when it would be done, those are not material issues of fact that preclude summary judgment. Further, whether Erickson thought that the repairs were done properly is not at issue, as this case does not involve a claim against the contractor. Erickson could not unilaterally refuse to comply with the Partnership agreement's terms and the Partnership's votes simply because he was unhappy with the repairs. The Partnership adhered to the terms of the agreement in voting to disassociate the Erickson unit from the Partnership for refusing to pay its portion of the cost of repairs.

¶28 In response, Erickson argues that all the Partnership's actions during this period were improper as they did not comply with the terms of the Partnership agreement. According to Erickson, "[a]ll meetings of the Partnership after September 2016 were illicit as persons who were not partners were allowed to attend the meetings, mak[e] motions, and vote on matters for the Partnership which made the meetings illicit and actions taken null and void." In particular, Erickson claims that Jeff Myers and Scott Myers, who were voting attendees at the Labor Day Meeting, were not actually representatives of the Myers unit, and therefore the vote to dissociate the Erickson unit was invalid.

¶29 At the May 27, 2018 Partnership meeting, Darlene

> announced [she was] handing over her [Partnership] responsibilities to her family and will be resigning as Vice President immediately. She will be represented at all meetings this year by [her children] Jeff and Scott. All on going [sic] communication regarding the Partnership should go to the three Myers children [Jeff and Scott Myers and Jodi Neilson].

14

Thomas moved to approve this substitution, and Diane—who was in attendance representing the Erickson unit—seconded the motion. The motion passed by a unanimous vote.

¶30    The Partnership agreement contains two provisions for adding to the Partnership. The first is found in section (14) and provides:

> At any time, a new partner/family unit (direct descendant of George and Anna Grotenhuis) may be admitted to the Partnership by a unanimous secret ballot vote of all the partners. The admission of such new partner shall be upon such terms and conditions as agreed upon by the majority of the partners at the time of such admission.

The Partnership argues that the purpose of this section is to bring in "*new* partner/family unit[s]," as not all of George and Anna's children were included in this Partnership originally and this provision allowed the option for them to join in the future. (Emphasis added.)

¶31    The second provision for adding to the Partnership is found in section (19)b., and it permits a partner or partner unit to withdraw and give "their share" to their children. Section (19)b. provides as follows:

> Partner(s) may choose to step down and give their child/children their share.
>
> The child/children (if they wish to become a partner) of a partner shall have a one-third interest in the [Partnership]. In the event no children of a partner decide to be a partner, then Section 10 will apply as if the partner were withdrawing from the Partnership. Responsibilities and decisions currently made within the family unit shall remain as such with the new members of that family unit. (The family unit shall be descendants of [Darlene], [Deloris] and Diane).

As written, this provision does not require a vote of the Partnership for a partner to step down and transfer their share to their child/children.

15

¶32    The circuit court concluded that the ability to pass a Partnership interest down to a partner's child/children under section (19)b. "is unqualified," "[t]here is no requirement of approval by the other partners," and "[n]one of the other provisions of the Partnership agreement restrict that ability."[13]  We agree. Thus, Darlene properly transferred her interest to Jeff and Scott at the May 27, 2018 meeting under section (19)b.  To the extent that section (14) may also apply, we conclude, and the circuit court agreed, that the Partnership substantially complied with the terms of the agreement by voting and unanimously approving the transfer.[14]

¶33    Erickson argues, however, that section (19)b. has no effect because section (14) nullifies that section.  We disagree.  As we have already noted, sections (14) and (19) address different circumstances wherein the makeup of the Partnership can be adjusted.  These sections are both distinct and compatible with each other.  Further, as we have noted, even if a vote of the Partnership is required under section (14), the Partnership complied with that requirement, and the motion passed unanimously.

---

[13] Erickson argues in his reply brief that "[s]ection 19 states that children *may, not shall* become partners.  This should be clear to all."  Our review of section (19) does not support Erickson's reading of the agreement.  The agreement provides that while "[p]artners(s) *may* choose to step down and give their child/children their share," "[t]he child/children (if they wish to become a partner) of a partner *shall* have a one-third interest in the [Partnership]." (Emphasis added.)  Thus, if a partner decides to step down, then the child/children of the partner may decide to become a partner.  In essence, the child/children of a partner are not required to become a partner; in that case, section (10) of the agreement would apply.  If they do wish to become a partner, however, they "*shall* have a one-third interest in the [Partnership]." (Emphasis added.)

[14] Erickson argues that section (14) "is clear[;] it requires a unanimous secret ballot of all the partners" and "[t]here was never a secret ballot vote taken then or since to admit the Myers children as partners," which was "a clear violation of the provision."  He fails, however, to develop an argument as to how the failure to hold a secret ballot vote admitting Darlene's children was a material breach of the Partnership agreement.

¶34    Erickson also claims that the vote was not unanimous because Diane, his wife,

> was not authorized to represent Robert Erickson at this meeting.  I would not have supported the motion or voted for it so she should not have done anything because she was not authorized and the Erickson's vote was moot. Diane had not received permission to represent me at the meeting and to vote favorably on matters that she knew I would not support.

Contrary to Erickson's argument, however, the agreement contains no provision requiring Diane to have Erickson's permission to vote when she is the one in attendance at the Partnership meetings.  Section (7) of the Partnership agreement provides that "[e]ach partner/family unit has one vote (1/3 ownership) on all matters brought before the Partnership."  As the Partnership argues, the agreement contains "no provision for an absent member of a Partnership unit to control, or veto, the vote of an attending partner.  There is no provision for proxy voting. Diane Erickson was entitled, being the only attendee from the Erickson Partnership unit at the meeting, to vote as she wished."

¶35    We agree.  Diane was in attendance at the May 27, 2018 meeting, she seconded the motion for Darlene to give her Partnership unit to her children, and she also voted in favor of it.  Thus, Jeff and Scott were not, as Erickson describes them, "illicit as persons who were not partners" at the Labor Day Meeting, and their vote to remove the Erickson unit from the Partnership was valid.

¶36    Finally, we will address Erickson's remaining arguments.  First, he argues that the COVID-19 pandemic made it impossible for him to defend against this lawsuit due to his inability to travel to retrieve his files from Minnesota when he resided in Hawaii.  Erickson's argument on this point is entirely undeveloped,

as he fails to specify in what way he could not and did not file necessary and timely documents with the circuit court due to the pandemic. We need not address undeveloped arguments. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

¶37 We note, however, that the circuit court granted Erickson an extension of the time to file his answer due to the COVID-19 pandemic. This extension was granted despite the fact that, as the Partnership argues, Wisconsin is a notice pleading state. Thus, a defendant need only "state in short and plain terms the defenses to each claim asserted and shall admit or deny the averments upon which the adverse party relies." WIS. STAT. § 802.02(2). At that juncture, Erickson had no need for his files, as he was not required to present evidence to defend against the lawsuit or to file a counterclaim. *See* § 802.02(1).

¶38 The circuit court also granted Erickson an adjournment of the hearing on the Partnership's motion for summary judgment, noting that the reason for the adjournment was that Erickson did not have his records available to him. During the litigation, counsel for the Partnership also suggested several options for Erickson to gain access to his records, but Erickson refused to try any of them. Finally, there is evidence in the record suggesting that Erickson returned to Minnesota in September 2020, which was before the October 31, 2020 deadline for filing motions for summary judgment or other dispositive motions. We therefore fail to see how the pandemic affected Erickson's ability to comply with the court's filing deadlines and defend against the lawsuit.

¶39 Second, Erickson argues that the circuit court "trolled [him] for the entire process,"[15] as the court "expand[ed] the time" to file his answer and other pleadings and then later ruled to "adhere to the original schedule" for summary judgment and dispositive motions. Thus, it appears that Erickson claims that the court treated him unfairly by requiring Erickson to comply with the deadlines ordered by the court. However, Erickson again fails to develop a legal argument that the court treated him unfairly. *See* **Pettit**, 171 Wis. 2d at 646-47.

¶40 We further conclude that the record does not support Erickson's claim, as best as we are able to discern it,[16] that the circuit court treated him unfairly. As noted above, the court granted an extension and an adjournment to Erickson during the proceedings. After an extension, Erickson timely filed his answer. However, all his subsequent filings were untimely. Erickson responds to this course of events by asking, "[W]hy did the court treat my position fairly early on in the case and at the end unfairly," suggesting that "fairness" in Erickson's mind would require that the court continue to allow Erickson to violate its scheduling order.

¶41 Erickson identifies alleged statements of the circuit court that he argues support his claim. First, he states that the court denied his counterclaim even though "earlier [the court] had suggested that I include some of my

---

[15] The term "troll" means "to antagonize (others) online by deliberately posting inflammatory, irrelevant, or offensive comments or other disruptive content" and "to harass, criticize, or antagonize (someone) especially by provocatively disparaging or mocking public statements, postings, or acts." *Troll*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/troll (last visited July 5, 2022).

[16] Erickson's arguments on this point are unclear, but we do not perceive that he is claiming that the circuit court was biased.

statements from the May 12th hearing in the counterclaim." As the Partnership notes, there does not appear to have been a May 12, 2020 hearing, and if there was, the transcript does not appear in the record.[17] *See State v. McAttee*, 2001 WI App 262, ¶5 n.1, 248 Wis. 2d 865, 637 N.W.2d 774 ("It is the appellant's responsibility to ensure completion of the appellate record and 'when an appellate record is incomplete in connection with an issue raised by the appellant, we must assume that the missing material supports the [circuit] court's ruling.'" (citation omitted)).

¶42     Second, Erickson argues that "the [circuit] court appeared to be open to expanding the time [for filing] when on December 16, 2020[,] [the court] asked me, 'are you prepared to discuss discovery and mediation?'" This question, Erickson argues, led him "to believe that the original schedule was being expanded." That alleged statement by the court does not appear to be in the transcript of the hearing; instead, the court stated, "The discovery deadline and the deadline for mediation is stayed pending the Court's decision regarding this motion for summary judgment." In reply, Erickson explains, "A call to the judge to see if he in fact made that statement will clarify this question as to whether it happened or not." Our review is confined to the record before us on appeal. *See Pettit*, 171 Wis. 2d at 646; *State v. Aderhold*, 91 Wis. 2d 306, 314, 284 N.W.2d 108 (Ct. App. 1979). We cannot simply "call" the court to ask if it remembers making a statement to a party in litigation years earlier.

---

[17] In reply, Erickson states, "The date of May 12th should be May 13th. That is my mistake and I apologize for putting in the wrong date." Our review of the record on appeal does not show that a hearing occurred on May 13, 2020, either; in any event, a transcript of a hearing on that date was also not included in the record.

¶43 Finally, Erickson argues that the circuit court "blindsided me [at the February 23, 2021 hearing] by denying my counterclaim when [it] was the one on August 12, 2020, who told me to put the other issues I had addressed into the counterclaim." The transcript does not support Erickson's characterization of the court's comments at the August 12, 2020 hearing. There, the court stated:

> And the reason [the motion for judgment on the pleadings as to Count four is] denied, is in argument made by Mr. Erickson today were a number of things. And while he didn't particularly couch them in the framework of a factual allegation, he indicated a lot of his complaints which presumably would have made up his counterclaim ….

As the Partnership argues, "'would have' is in the past conditional tense …. It refers to an event that never happened." Thus, the court's comments related to an event that could have occurred but did not: Erickson's timely counterclaim. It was not, as Erickson suggests, an invitation to file a counterclaim when the deadline for pleadings had already been extended and had then expired.

¶44 In sum, Erickson's claim that the circuit court treated him unfairly lacks both legal and evidentiary support. We therefore affirm the court's decision granting summary judgment to the Partnership.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.